BRIGHAM et al. v. JOHN F. SCHMADEKE, Inc., et al.

(District Court, E. D. New York. November 14, 1919.)

1. WHARVES ⬧⟷20(1)—OWNER NOT LIABLE FOR INJURY TO MOORED VESSEL FROM COLLISION.

Owner of property on Gowanus Canal, which maintained a berth for boats on its front, which was known to users of the canal, *held* not liable for injury to a barge moored there from collision with a passing boat, although the barge, where it lay, was necessarily an obstruction to navigation.

2. COLLISION ⬧⟷71(2)—PASSING BOAT LIABLE FOR INJURY TO MOORED VESSEL.

One moving a boat up Gowanus Canal, with knowledge of other boats berthed on the side of the canal, *held* responsible for injury by collision to a barge so moored.

In Admiralty. Suit by Henry R. Brigham and William H. Brigham, trading as Brigham Bros., against John F. Schmadeke, Incorporated, with John Morton's Sons Company impleaded. Decree for libelants against John F. Schmadeke, Incorporated, and dismissed as against Morton's Sons Company.

Harrington, Bigham & Englar, of New York City, for libelants.
Hyland & Zabriskie, of New York City, for John F. Schmadeke, Inc.
George W. Titcomb, of Brooklyn, N. Y., for John Morton's Sons Co.

⬧⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. The accident occurred on the 19th of August, 1918, and all the important occurrences were before dark. The brick barge Brigham came up the Gowanus Canal with the flood tide, and with the acquiescence of the Morton Company took the lower of the three berths in front of their property, being moored in such a position that the stern of the Brigham cleared the Carroll street abutment by some 50 feet. The angle of the Carroll street draw is such that a boat coming straight through the draw up the canal would come in contact with a boat lying in the berth in which the Brigham was placed, unless pulled away by a tug or by lines.

According to the testimony, the tide was flood between 6 and 7 p. m. After the tide turned, the current continued to run up the canal, because the city pump, used to flush the canal, was working and creating a strong draft. The captain of the Brigham had left his boat apparently moored in a proper way to avoid injury as the tide went down. There is a distinct slope, both to the side of the prism of the canal and in from the abutment of the bridge at this corner, which is used only for receiving the stream of a small street sewer or drain, shown in the picture as emptying from Carroll street.

The Brigham, when breasted out, projected so that no boat could pass up through the draw. Shortly after the Brigham's arrival, the Gowanus Towing Company took through a coal barge to the Schmadeke yard. According to the testimony of several of the witnesses, this barge actually came in contact with the Brigham; but the passage was possible at that time because at high tide the Brigham was still in close to the bulkhead.

Immediately after this boat had gone through, the captain of the Brigham ate his supper and then breasted his boat off. In the meantime the Josephine, which had been brought to the southerly side of the Carroll street draw, attempted the passage. It appears that the Josephine had been left at this southerly side of the draw by the tug bringing her there, either because the day's work of the tug was over, or because the tug captain did not wish to make an attempt to put the boat through. He apparently arrived at this point at just 5 o'clock, and testifies that he told the captain of the Josephine and the foreman of the Schmadeke Company that he could not put the boat through under the conditions at that state of the tide. If he gave this warning, it merely added to the responsibility of those undertaking to move the boats, and in no way brings the Gowanus Towing Company into the situation.

Owing to the demand for coal, the Schmadeke Company undertook to do by hand what the Gowanus Towing Company had not undertaken to do, and drew the Josephine by lines throught the draw. According to the custom in the Gowanus Canal, the brick boat, which was then breasted off from the bulkhead, was to be moved in order to allow the Josephine to pass through. There seems to be no rule of law or private right which prohibits the moving of a boat under such circumstances. Conditions in the canal require that the captain in charge of the boat, or the owner providing the berth, anticipate and provide for craft when in their charge, in order to meet the responsibility

which is presented if use of the canal requires the moving of the boats.

In this situation the Schmadeke men provided that two of their number should go on the Brigham, so as to take out the forward and aft props, which had been used by the captain to breast the boat away from the bulkhead. These men apparently did remove both of the props, or, at any rate, the stern prop. The forward prop was removed, or was not in place, and the Brigham was free. She was then drawn in toward the bulkhead, when the Josephine (passing through the draw with the current of the pump dragging her toward the side where the Brigham was lying) failed to clear the Brigham, striking her about a foot from the starboard after corner, and then jamming in that position. At this point the captain of the Josephine, who had been absent when the Schmadeke men started to take the boat through, came back to his boat and immediately endeavored to warp her out, by lines which he led to the other side of the canal. Failing in the attempt to draw her back, he carried the line forward, had the men man the capstan, and then drew the Josephine into the clear water of the canal by pulling her forward in contact with the side of the Brigham. The apparent result of the original collision, and this squeezing of the Brigham as the Josephine passed through, forced the Brigham toward the shore and grounded her so firmly that the man who, according to the respondent's testimony, was left on the Brigham to breast her out again, was unable to move her. He evidently reported this to his foreman, and about an hour later the foreman, with the gang of men, having acted about as speedily as he could under the circumstances, found that she was hard aground, and in a position where she remained for several days, until unloaded.

There is some evidence that the parties discussed the advisability of and responsibility for an attempt to pump out the Brigham immediately. There is nothing to indicate that she could have been floated by such pumping, or that her condition was made worse by her being allowed to lie there until unloaded. I think, therefore, that collateral dispute was immaterial.

[1] As I see the situation, the berth maintained by the Morton Company is a disagreeable feature of navigation in the canal; but it is not a nuisance, such that the mere existence of that kind of a berth will render them liable for all damage. The condition, size, and arrangement of the channel in the Gowanus Canal is such that responsibility for accident cannot be placed on those who permanently maintain a location or yard which is more or less of an obstruction to navigation, where that obstruction is obvious and notorious, and actually expected by those using the canal. The Morton Company could not be charged with blocking the draw under conditions shown in this case, unless they deliberately and knowingly created some new condition, which would mislead and cause likelihood of injury to those using the canal in a proper way, from the standpoint of their previous knowledge.

[2] So that the question in this case comes down to whether the Schmadeke Company, using the canal in the condition in which they knew it was, and meeting the circumstances which they would expect under those conditions of the tide, are responsible for what happened

to the Brigham through acts of their employés which are equivalent to negligence. The Schmadeke Company undertook to conduct the navigation of the Josephine by hand, and their need of the coal was such that they did this rather than to wait for the next day, or to put responsibility on the towing company, by getting them to bring the boat up at night. Under such circumstances they must assume responsibility for the manner in which the work was conducted. That responsibility would include choice of methods for taking the boat through the drawbridge, and would include the determination of how far the Brigham could be safely moved out of the way, or could be transferred in order to clear the draw. The testimony shows that there was a cement boat of much less beam immediately ahead of the Brigham, and if, under the circumstances, it was necessary to shift these boats, the responsibility would rest upon the persons undertaking the maneuver, namely, the Schmadeke Company, and not the captain of the Brigham.

As I see the issue, the petition against the Morton Company must be dismissed, and the libelant is entitled to a decree against the Schmadeke Company.