**THE PHILIP FEENEY. THE NO. 32. LOW TRANSPORTATION LINE, Inc., v. UNITED STATES et al.**

(District Court, E. D. New York. May 22, 1923.)

No. 3459.

I. **Collision** ⊜➝71(3)—**Permitting steamship to extend beyond end of pier into narrow channel held contributing cause of collision with passing tow.**

A contractor for making repairs on a government vessel *held* to have control of determining her berth while the repairs were being made; and by so placing her that the stern extended 40 feet beyond the end of a pier into a narrow channel, without protection by booms or rigging, *held* to have contributed to a collision at night with a passing tow.

2. **Collision** ⊜➝71(2)—**Tug held in fault for improper arrangement of tow.**

A tug, which at night entered a narrow channel, where maneuvering might be expected to become necessary because of other moving vessels, with two barges in tow, both on the same side, *held* in fault for a collision between the outer barge and a moored vessel, while backing to permit another tug to cross, for not placing one barge on each side, which would have given better control.

In Admiralty. Suit by the Low Transportation Line, Inc., owner of barge Philip Feeney, against the Pennsylvania tug No. 32, with James Shewan & Sons, Inc., and others, impleaded under the fifty-ninth rule in admiralty. Decree for libelant against the tug and James Shewan & Sons, Inc.

Park, Mattison & Lynch, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for the Pennsylvania tug No. 32.

Ralph C. Greene, of Brooklyn, N. Y., and J. Kennedy White, of Buffalo, N. Y., for the United States.

Foley & Martin, of New York City, for respondent James Shewan & Sons, Inc.

Bigham, Englar & Jones, of New York City, for respondent McCann-Camp Co., Inc.

CAMPBELL, District Judge. A libel was filed herein against the Pennsylvania Railroad steam tug No. 32 for damages caused to the barge Philip Feeney by collision, and under the fifty-ninth rule in admiralty the United States of America, McCann-Camp Company, Inc., and James Shewan & Sons, Inc., were on petition impleaded as

respondents. On the trial the libel was on consent dismissed as to Mc-Cann-Camp Company, Inc., without costs.

On the afternoon of February 9, 1921, the Pennsylvania Railroad steam tug No. 32 took the coal boat Philip Feeney, laden with coal, with other boats, in tow at South Amboy, N. J., the Philip Feeney being bound for Gowanus Canal, Brooklyn, and between 3 and 4 o'clock a. m. on February 10th the said Pennsylvania Railroad steam tug No. 32, having made most of her tow fast to the Pennsylvania stakeboat, proceeded up Gowanus Bay or Canal with two boats, the Albany and Philip Feeney, on her starboard side; the Albany being made fast to the tug, and the Philip Feeney being on the outside. The master of Pennsylvania Railroad steam tug No. 32 saw a Lackawanna tug with a car float in tow pass him and go into Gowanus Bay or Canal.

At that time the steamship Sapulpa, owned by the United States of America, or the United States Shipping Board Emergency Fleet Corporation, was made fast at the upper or eastwardly side of Pier No. 3 of James Shewan & Sons, Inc., shipyard, on the southerly side of Gowanus Bay or Canal, where she had been placed by the direction of said James Shewan & Sons., Inc., who had the said steamship under repairs under a written contract with the United States Shipping Board Emergency Fleet Corporation. The stern of said steamship extended into Gowanus Bay or Canal over 40 feet beyond the line of the head of said Pier No. 3.

When the Pennsylvania Railroad steam tug No. 32, with her tow, approached and was opposite the stern of the steamer Sapulpa, the master of the Pennsylvania Railroad steam tug No. 32 heard a whistle of a tug backing out beyond the steamer Sapulpa. He gave an alarm, signaled the engineer to stop and back with the starboard screw, in order to permit the outgoing tug to pass out, and while so backing brought the starboard side of the Philip Feeney violently into contact with the rudder of the steamship Sapulpa, causing considerable damage to the Philip Feeney.

Gowanus Bay or Canal was a narrow channel and much used, and the master of the Pennsylvania Railroad steam tug No. 32. knew that there were always boats in the channel at night, and that the Lackawanna tug, with her tow, had passed him going in. He also knew that he might be required to stop for other boats in going up the bay or canal, and that, with the two boats of his tow on the one side of his tug, he would not have the same control over the tug and tow to back right astern, if required, that he would have if he had placed one boat of his tow on each side of the tug.

The pier head line as established March 4, 1890, in front of said Pier No. 3 was some distance out in the bay or canal, as shown by the survey, Shewan's Exhibit No. 1, and just about at the pier line so established, as shown by the survey, United States Exhibit No. 1, received in evidence in the instant case. But in any event the stern of the steamship Sapulpa extended some 40 feet into the bay or canal beyond the head of said Pier No. 3, and there were no booms or rigging about the rudder of said steamship which projected into the canal or bay. There was no evidence to show that it was customary to moor a vessel of the length of the Sapulpa at the place where she was

moored; but, on the contrary, it would appear from the length of the pier that it was designed as a berth for shorter vessels.

There was grave dispute as to whether there was a light at the stern of the said steamship Sapulpa at the time of the collision; but I do not think that the existence or absence of a light contributed to the collision, because from the testimony of the master of the Pennsylvania Railroad steam tug No. 32, it appeared that most, if not all, of the tug and tow must have passed the steamship before he reversed his engines, and he thus knew of its location. But, without doubting that the testimony of the master of the Pennsylvania Railroad steam tug No. 32 and her lookout represent their honest belief and recollection that there was no light on the stern of the said steamship Sapulpa, I am of the opinion that they were in error, and am convinced by the evidence offered by the respondents that there was such a light.

The United States, or the United States Shipping Board, had a crew aboard the said steamship; but, having found that there was a light, no question arises between the United States and James Shewan & Sons, Inc., with reference to the responsibility therefor.

[1] I am of the opinion that the respondent James Shewan & Sons, Inc., under the contract in evidence, had control of determining the berth to be occupied by said steamship Sapulpa during the making of the repairs, and that, in allowing the stern of said steamship to extend as it did beyond the existing pier line, it contributed to the collision by encroaching on a narrow channel. The Margaret J. Sanford (D. C.) 30 Fed. 714; The Bern, 255 Fed. 325, 166 C. C. A. 495. In so finding I have not failed to take into consideration the cases cited by the respondent; but I do not think that they apply, because they related to the mooring of vessels in the Hudson river, which is not a narrow channel.

I am further of the opinion that, by failing to see that there were booms or rigging about the rudder which was sharp and encroached on a narrow channel, the said James Shewan & Sons, Inc., without right deprived the Pennsylvania Railroad steam tug No. 32 of the use of the full width of the channel for maneuvering at a time when it became necessary, and thus contributed to the collision.

Whether the collision occurred within or without the pier line as established by law, as to which there is grave doubt, by reason of the difference in the two surveys offered in evidence, I am of the opinion that it was the extension of the steamship Sapulpa beyond the existing pier line, in the narrow channel, that contributed to the collision, as no ship could determine the pier line when sailing, as such line could only be determined by a surveyor after taking the proper measurements.

[2] I am also of the opinion that, with the knowledge of the difficulties of navigation of the narrow channel of Gowanus Bay or Canal, possessed by the master of the Pennsylvania Railroad steam tug No. 32, and also with the knowledge that in backing, which he might reasonably be required to do, he could not have the same control over his tow with both the boats on the starboard side that he would have with one on each side, he should have so arranged his tow that he could have best controlled them; and this is especially true when he was passed by the Lackawanna tug with her tow, and knew that he

would at least have her moving in the narrow channel, and that by reason of his failure to so control his tow the Pennsylvania Railroad steam tug No. 32 contributed to said collision. Brigham v. Schmadeke (D. C.) 262 Fed. 571.

I therefore find that the barge Philip Feeney and the United States of America are without blame, and that Pennsylvania Railroad steam tug No. 32 and James Shewan & Sons, Inc., are to blame for the said collision. A decree will be entered in favor of the libelant against James Shewan & Sons, Inc., and Pennsylvania Railroad steam tug No. 32 for one-half damages each, with costs, and the usual order of reference.